UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                         Case No. 14-12674-BKC-JKO

UNITED ELECTRONICS, CORPORATION,        Chapter 11

        Debtor.
_____/

**UEC ACQUISITION HOLDINGS, LLC'S OBJECTION
TO DISCLOSURE STATEMENT AND REQUEST FOR RELATED RELIEF**

        Secured creditor, UEC Acquisition Holdings, LLC ("***UECAH***"), objects to the approval of the disclosure statement proposed by United Electronics, Corporation, (the ***"Debtor"***) [ECF No. 99] (the ***"Disclosure Statement,"***) and requests that the Court decline to approve the Disclosure Statement, that exclusivity be terminated, and that a chapter 11 trustee be appointed, or, alternatively, that the case be dismissed or converted, and states as follows:

**PRELIMINARY STATEMENT**

        Protected by exclusivity, the Debtor has proposed a plan of reorganization [ECF No. 99] (the "Plan") which benefits exactly one person, its alleged member and director, Gavriel Meidar (***"Meidar"***). The Plan proposes to pay a heavily discounted amount to secured creditors, while making a paltry $200,000.00 distribution to unsecured creditors, and shedding more than $16,000,000.00 in scheduled debts. Further, the Plan circumvents the absolute priority rule, allowing Meidar to improve his alleged equity position from 55% to 100%, and ensures that no one may object to his excessive salary, through the attempted repurchase of equity at an arbitrarily low amount which is not subject to higher and better offers.

1

The Disclosure Statement describes a speculative situation in which the majority of the secured claims are allowed only in part, and makes no mention of the feasibility of consummating the Plan in the highly likely event that secured claims are more extensive. Moreover, the Disclosure Statement provides no information to verify the projections set forth therein, and certainly fails to provide information as would enable a hypothetical investor to make an informed decision about the Plan.

Instead, the Disclosure Statement provides scant details, and demonstrates the Debtor is chiefly concerned with preserving the value for Meidar. Accordingly, conversion, dismissal, or appointment of a trustee is in the best interest of the creditors.

## ANALYSIS

1.      The Disclosure Statement cannot be approved because it fails to meet the standard of "adequate information," as set forth in 11 U.S.C. § 1125. The Disclosure Statement is insufficient in that (a) it fails to provide adequate supporting information for the statements made therein; (b) fails to adequately describe the risks to the Plan; (c) fails to disclose the Debtor's prepetition history; and (d) appears to have been proposed in bad faith for the sole purpose of preserving value for Meidar.

2.      The purpose of a disclosure statement is to provide creditors with sufficient information to enable them to decide whether to vote for the plan of reorganization. *In re Microwave Prods. of Am. Inc.*, 100 B.R. 376, 377 (Bankr. W.D. Tenn. 1989). Section 1125 defines 'adequate information' as "information of a kind, and in sufficient detail, . . . that would enable [] a hypothetical investor of the relevant class to make an informed judgment about the plan. . . ." 11 U.S.C. § 1125(a)(1).

2

3.      A court may also refuse to approve a disclosure statement if it is clear that the plan of reorganization is not confirmable. *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr.N.D.Ga. 1988). "This is to avoid engaging in a wasteful and fruitless exercise of sending the disclosure statement to creditors and soliciting votes on the proposed plan when the plan is unconfirmable on its face. Such an exercise in futility only serves to further delay a debtor's attempts to reorganize." *Id.*

4.      Here, the Disclosure Statement fails in both regards. The Disclosure Statement is wholly inadequate to enable a hypothetical investor in any class (including, but not limited to UECAH) to make an informed decision as to the Plan.  However, even if the Disclosure Statement were sufficient, the Plan is unconfirmable on its face, and thus the Court should deny approval of the Disclosure Statement.

**A.  The Disclosure Statement lacks adequate supporting documentation**.

5.      A "Disclosure Statement should include a discussion of the anticipated future of the debtor's business. Merely attaching pro forma income calculations to the Disclosure Statement is insufficient." *In re Cardinal Congregate I*, 121 B.R. 760, 767 (Bankr. S.D. Ohio 1990). The legislative history of section 1125(a) explains that

> A plan is necessarily predicated on knowledge of the assets and liabilities being dealt with and on factually supported expectations as to the future course of the business sufficient to meet the feasibility standard in Section 1130(a)(11) of this title. It may thus be necessary to provide estimates or judgments for that purpose. Yet it remains practicable to describe, in such detail as may be relevant and needed, the basis for the plan and the data on which supporters of the plan rely.

Senate Report No. 95–989, 95th Cong., 2d Sess. (1978). Here, it is the lack of factual support which underlies the inadequacy of the Disclosure Statement.

3

6.      Pursuant to the Plan, UECAH is to receive payment on its secured claim with "funds . . . which shall derive from the operation of the Debtor's business in the ordinary course prior to and after the Effective Date." *Disclosure Statement,*§V.A. The Debtor attaches, as Exhibit D to the Disclosure Statement, a projected income and expense budget which shows the Debtor "has the funds available to perform its obligations under the Plan."

7.      Exhibit D, however, is a two-page spreadsheet which sets forth the Debtor's projected income and expenses, without any supporting documentation or even an explanation of how the figures were calculated. There is no explanation for how the Debtor's revenue is to increase by approximately 10% per year over the next five years.  This is especially important because, currently, the Debtor's monthly operating reports describe secured creditor payments of only approximately $55,000.00 per month ($660,000.00 per year). Indeed, the Debtor asserts that its claimed post-petition positive cash flow is indicative of its future ability to make payments under the Plan.

8.      However, the Debtor's own projections show a 50% increase in secured creditor payments in 2015 ($963,000.00).  If the Debtor's ability to make such payments is predicated on a speculative 10% growth figure (and it is impossible to tell from the Disclosure Statement if that is the case), then a hypothetical investor would absolutely need to know the sources and data underlying the 10% revenue growth projection. Instead, it appears that the Debtor would ask the creditor body to have blind faith in Mr. Meidar's assertion that the Plan is feasible. Not only is that contrary to the letter and intent of section 1125, but as set forth in Section E, *infra,* the apparent intentions in proposing the Plan make this especially troubling.

9.      Because critical information in the Disclosure Statement lacks any support, the Court should deny approval of the Disclosure Statement.

4

**B. The Disclosure Statement does not adequately describe the risks to the Plan**.

10.    "Generally, a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization. A disclosure statement should likewise contain all material information relating to the risks posed to creditors and equity interest holders under the proposed plan of reorganization." *Cardinal Congregate*, 121 B.R. at 765 (citations omitted).

11.    The Disclosure Statement, however, is completely devoid of any discussion of risk. The only statement which concerns risk is the Debtor's statement that "BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, THE DEBTOR'S ACTUAL RESULTS MAY NOT BE AS PROJECTED HEREIN." *Disclosure Statement,* Art. I (emphasis in original). The risks and effect of the Debtor's "actual results . . . not be[ing] as projected," however, are exactly the contents which *must* be part of a disclosure statement.

12.    Further still, the Debtor does not discuss the effect of an election by a secured creditor pursuant to 11 U.S.C. § 1111(b), and whether the Plan would still be feasible if such an election is made. In fact, the Debtor does not discuss the treatment of claims for which the election is made at all.

13.    UECAH believes, based on the language in the Plan, that the treatment would be unchanged. For instance, as to UECAH's class 3 claim, the Debtor proposes the full amount UECAH's Allowed Secured Claim. An Allowed Secured Claim, however, is defined in the Plan as an Allowed Claim, "but in any event only to the extent of the value" of the collateral. In the case of an undersecured creditor, because an election under section 1111(b) would result in an allowed secured claim (under the bankruptcy code) which far exceeded the Allowed Secured Claim (as defined in the Plan), the treatment of such a claimant appears to be objectionable. Still,

a secured creditor should not be forced to guess due to the Debtor's inartful definitions of terms clearly defined under title 11, especially since Fed.R.Bankr P. 3014 requires the election be made prior to the disclosure statement hearing. Simply put, as currently proposed, the Plan and Disclosure Statement are inadequate to determine whether to make an election under section 1111(b).

14.     Moreover, the Disclosure Statement does not discuss the effect of the absolute priority rule.  Because the unsecured creditor class will receive less than full distribution on account of their claims, it is clear that Meidar's repurchase of equity is conceived to circumvent the requirements under 11 U.S.C. § 1129(b)(2)(B). The Disclosure Statement, however, does not discuss whether, in the likely event that the repurchase price is deemed insufficient, the Debtor may still make payments to unsecured creditors, or another entity would be permitted to purchase the equity at arm's length (and fund class 13 payments).

15.     Additionally, the Disclosure Statement's description of the exculpation provisions in the Plan is ambiguous, and it is unclear what and whom will be released by the confirmation of the Plan.

16.     Finally, the Plan appears to propose to pay junior liens with UECAH's cash collateral. Absent UECAH's consent, or a finding that UECAH is adequately protected, the payment of junior liens out of a senior lienholder's cash collateral renders the Plan unconfirmable. *In re Midway Investments, Ltd.*, 187 B.R. 382, 391 (Bankr. S.D. Fla. 1995). Yet, the Disclosure Statement does not discuss the risk to the creditor body if UECAH withdraws its consent to the use of cash collateral.

17.     All of this is in addition to a lack of a discussion of the effect of the Debtor's revenue being less than its seemingly arbitrary projections discussed in section A above. Because

the Disclosure Statement fails to discuss the pertinent risks to the Plan of Reorganization, the

Court should decline to approve it.

**C. The Disclosure Statement fails to disclose the events leading to the bankruptcy filing**.

18.    The Disclosure Statement sets forth that

> the Debtor became delinquent in its obligations to its primary secured creditor, its equipment lessors and related secured creditors, and its unsecured trade creditors. This resulted in numerous claims and lawsuits by the Debtor's creditors, including a lawsuit by the Debtor's primary secured creditor, UEC Acquisition Holdings LLC. In December 2013, the current ownership team became involved with the Debtor and has begun to turn around the Debtor's finances. However, in the meantime, litigation against the Debtor continued. Faced with the possibility of an imminent appointment of a receiver, the Debtor filed this Chapter 11 proceeding to provide itself with a breathing spell from its creditors, so that it can formulate a comprehensive Chapter 11 plan to restructure its debts and return to a viable and profitable business.

19.    The Debtor admits that the appointment of a receiver was the impetus for the filing. That may be true, in part. However, by casting the immediate need to file as driven by relief from debt collection efforts, the Debtor (through Meidar) declines to disclose the entire story, that the petition was filed to protect Meidar's alleged interest in the Debtor.

20.    Specifically, just two months prior to the petition date, Meidar allegedly obtained 55% of the outstanding stock of the Debtor, in contravention of the Debtor's Shareholder Agreement and other financing documents and agreements.

21.    Following his improper acquisition of the stock, Meidar seized the opportunity to wrest control over the Debtor, to the detriment of the Debtor and its creditors. On December 9, 2013, Meidar executed a Notice of Consent Action by Majority Shareholder of United Electronics, Corporation, a Florida corporation (the ***"Meidar Resolution"***).

7

22.     Per the Meidar Resolution, Meidar, as purported majority shareholder, waived all requirements to hold a meeting, and took the following actions without a meeting of United Electronics' Board of Directors and Shareholders:

      a)    Dismissed and removed all members of the Board of Directors without cause;

      b)    Forbade the Debtor's prior management, including a representative of one of the Debtor's shareholders,  from taking any further acts on behalf of United Electronics;

      c)    Appointed himself and Hana Meidar, his wife, as members of the Board of Directors; and

      d)    Authorized only himself and Hana Meidar as signatories with respect to United Electronics' various bank accounts, credit lines, safe deposit boxes or vaults.

23.     Whitewater Capital Management, LLC ("**Whitewater**") and UECAH immediately filed suit, seeking to enjoin the actions of Meidar, set aside the sale of stock to Meidar, and appoint a receiver for the benefit of the creditor body. *Whitewater Capital Management, LLC v. United Electronics, Corporation, et al*, CASE NO. 13-027566 (14), (Fla. 11th Cir. Ct. 2013) (the "*State Court Case*").

24.     The bankruptcy petition was filed on the eve of a receivership hearing, with future hearings pending to declare the alleged sale of stock to Meidar null and void. Taken together, these facts, which the Debtor has declined to disclose, show that the petition and the Plan are essential parts of Meidar's continuing efforts to unlawfully acquire 100% of the Debtor, while

shedding the Debtor's significant unsecured debt and making a *de minimis* contribution to the estate.

25.     The first factor to evaluate "the adequacy of a disclosure statement [is] the events which led to the filing of a bankruptcy petition." *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984). Here, the Debtor, through Meidar, has deliberately failed to disclose these events, and based on this wholly inadequate and misleading disclosure, the Court should decline to approve the Disclosure Statement.

**D.  The Plan and Disclosure Statement are proposed in bad faith**.

26.     Despite the prepetition issues, including the events leading to the motion to appoint a receiver, UECAH was willing to give the Debtor an opportunity to act in good faith in its chapter 11 case. In fact, in order to enable the Debtor to reorganize and propose a plan which would benefit the creditor body, UECAH has repeatedly agreed to the use of its cash collateral, and has not sought relief from stay to this time, in an effort to allow the Debtor to reorganize and pay its creditors. The Debtor, however, abused this.  The Debtor waited until the end of the exclusivity period, and even then, proposed a Plan and Disclosure Statement which did not adequately delineate UECAH's claim and treatment.

27.     "In evaluating good faith, the bankruptcy court must look to the totality of the circumstances surrounding the development and proposal of the plan." *In re SM 104 Ltd.*, 160 B.R. 202, 244 (Bankr. S.D. Fla. 1993). "The court may consider prepetition conduct of the debtor only if that conduct is relevant to show a desire on the part of the debtor to 'use bankruptcy procedures to avoid paying a debt rather than for rehabilitation.'" *Id.*

28.     That is precisely the case here. Bankruptcy affords Meidar the opportunity to do what he could not do outside of bankruptcy. That is, he could not acquire a controlling share of

the Debtor prepetition. All of the Debtor's actions both leading up to the filing and since the filing show that the Debtor's sole objective is to use the bankruptcy to vest a 100% share of the company in Meidar.

29.    By unlawfully obtaining control of the Debtor, and filing a petition under chapter 11, Meidar, through this Plan, is attempting to wipe out all of the equity in the Debtor, yet his control of the reorganization (by virtue of exclusivity) affords him the ability to purchase 100% of the new equity without the consent of (or offer of the same deal to) the other shareholders, or any other party-in-interest, for that matter. This secures a sweetheart deal, whereby he is also paid a salary of $160,000.00 per year, can receive distributions of the net profits of the Debtor, and the estate receives a *de minimis* payment of $200,000.00.

30.    UECAH (and presumably other parties) would consider paying excess of $200,000.00 for 100% of the equity of the reorganized Debtor. That alone demonstrates that a repurchase at such a price is not in the best interests of the unsecured creditor class. Indeed, in addition to violating the absolute priority rule,[1] it would preclude confirmation pursuant to 11 U.S.C. § 1129(a)(5). This is especially true since Meidar's short history with the Debtor obviates any benefit a debtor may usually have from the longstanding experience of the its principal.

31.    Taken together, Meidar's prepetition and postpetition actions demonstrate that the filing of the petition, and proposal of the Plan and Disclosure Statement, were all undertaken solely to benefit Meidar. Meidar has offered a bargain sale of equity to himself that he has not offered to any other party in interest. In sum, the Plan and Disclosure Statement were filed in bad faith.

---

[1] To the extent there is a dissenting class of unsecured creditors, it is abundantly clear that the Plan could never be confirmed pursuant to 11 U.S.C. § 1129(b).  There is no "market test," as the Supreme Court has explicitly held would be required to cram down a dissenting class of unsecured creditors. *Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 458, 119 S. Ct. 1411, 1424, 143 L. Ed. 2d 607 (1999).

**E.  A trustee should be appointed**.

32.    The Court may appoint a trustee

> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a)(2). Here, for the reasons set forth above, the appointment is in the interests of the creditors.

33.    The appointment of a trustee is in the interests of every party-in-interest except for Meidar. A trustee can investigate any cause of action against Meidar for his improper takeover of the company. A trustee can set up an arm's length sale of the Reorganized Debtor's equity in order to realize the highest and best value for the Debtor's unsecured creditors. A trustee can be trusted to make competent projections as to the Debtor's future performance such that creditors may determine whether their treatment in a chapter 11 plan is in their best interests.

34.    Finally, a trustee can and will maximize the benefit to the estate of selling equity in the reorganized Debtor for a fair price. Because Meidar has only been involved with the company for a just a few months, there is little detriment to the estate from selling to a third-party, yet the benefit is possibly very significant, and the only chance for a meaningful distribution to unsecured creditors. A trustee should be appointed.

35.    UECAH reserves the right to supplement this objection at the hearing to consider approval of the Disclosure Statement.

11

WHEREFORE, UECAH requests that the Court decline to approve the Disclosure Statement; that exclusivity be terminated and a chapter 11 trustee be appointed, or, alternatively, that the case be dismissed or converted and that the Court grant such other and further relief as is just and appropriate.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via the Court's Notice of Electronic Filing on July 15, 2014, upon all parties listed on the attached **Exhibit 1**.

<div style="margin-left:auto">

s/ Joshua W. Dobin
Joshua W. Dobin, Esquire
Florida Bar No. 93696
JDobin@melandrussin.com
Lawrence E. Pecan, Esquire
Florida Bar No. 99086
LPecan@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221
*Attorneys for UEC Acquisition Holdings, LLC*

</div>

## SERVICE LIST

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive e-mail notice/service for this case and who therefore will be served via the Court's Notice of Electronic Filing:

| | |
|---|---|
| ena@assoulineberlowe.com | Eric N Assouline, Esq  on behalf of Eric N. Assouline |
| jdobin@melandrussin.com | Joshua W Dobin  on behalf of UEC Acquisition Holdings, LLC |
| ddressler@dresslerpeters.com | Dennis A Dressler  on behalf of 360 Equipment Finance, LLC |
| ron.emanuel@emanlaw.com | Ronald M Emanuel, Esq  on behalf of Wells Fargo Equipment Finance, Inc. |
| grossmansm@gtlaw.com | Scott M. Grossman, Esq.  on behalf of M&T Bank |
| mkassower@fwblaw.net | Michael R Kassower  on behalf of Florida A&M Tape & Packaging, Inc. |
| craig@kelleylawoffice.com | Craig I Kelley  on behalf of Thad York |
| ckitchner@broward.org | Carl L Kitchner  on behalf of Broward County Records, Taxes & Treasury |
| pmonioudis@bellsouth.net | Perry D. Monioudis, Esq  on behalf of Graybar Electric Company, Inc. |
| apopowitz@lslawfirm.net | Ashley Prager Popowitz  on behalf of United Electronics, Corporation |
| zshelomith@lslawfirm.net | Zach B Shelomith  on behalf of United Electronics, Corporation |
| USTPRegion21.MM.ECF@usdoj.gov | Office of the US Trustee |

**EXHIBIT 1**